# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RICHARD FORNELL, AS TRUSTEE OF**
**THE FORNELL ENTERPRISES INC.**
**401(k) PROFIT SHARING PLAN,**

<b>Petitioner,</b>

**-vs-**                                              **Case No.  6:12-cv-38-Orl-28TBS**

**MORGAN KEEGAN & COMPANY, INC.,**

<b>Respondent.</b>

_____

# ORDER

This is an action to confirm an arbitration award.  In response to the Petition to Confirm Arbitration Award (Doc. 1) filed by Richard Fornell, as Trustee of the Fornell Enterprises, Inc. 401(k) Profit Sharing Plan ("Fornell"), Respondent, Morgan Keegan & Company, Inc. ("Morgan Keegan"), filed a Counterclaim to Vacate Arbitration Award (Doc. 5).  Fornell has responded to that motion and has also moved for sanctions against Morgan Keegan.  (See Docs. 10, 11, 19, 22, & 25).   Upon consideration, Morgan Keegan's counterclaim to vacate is denied, Fornell's petition for confirmation is granted, and Fornell's motion for sanctions is granted.

### I.  Background

Morgan Keegan is a securities broker-dealer.  Fornell maintained brokerage accounts with Morgan Keegan, and in May 2010 Fornell initiated an arbitration proceeding against Morgan Keegan to recover trading losses after Morgan Keegan allegedly misrepresented

the nature and riskiness of some investments.  Fornell brought claims of violation of ERISA, breach of fiduciary duty, negligence, negligent supervision, fraud, and breach of contract.

An arbitration hearing was held in December 2011 before a panel of three Financial Industry Regulatory Authority ("FINRA") arbitrators.  In January 2012, the arbitration panel issued a unanimous award of compensatory damages to Fornell in the amount of $194,976.00, finding that Morgan Keegan was liable on the claims of violation of ERISA, breach of fiduciary duty, negligence, and negligent supervision.  In this suit, Fornell seeks confirmation of this award, while Morgan Keegan seeks to vacate it.

## II.  Discussion

Pursuant to the Federal Arbitration Act ("FAA"), a party may apply to a district court for an order confirming an arbitration award, and "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed" in the statute.  9 U.S.C. § 9. "Judicial review of arbitration awards under the FAA is very limited."  Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 778 (11th Cir. 1993).  The statute "presumes that arbitration awards will be confirmed and enumerates only four narrow bases for vacatur." Id. (internal citation omitted).

The four statutory bases for vacatur are set forth in 9 U.S.C. § 10(a)(1)-(4), and Morgan Keegan relies on two of these four in seeking to vacate the award at issue here—§ 10(a)(2), which allows for vacatur "where there was evident partiality or corruption in the arbitrators, or either of them," and § 10(a)(3), which allows for vacatur "where the arbitrators were guilty of . . . any other misbehavior by which the rights of any party have been prejudiced."  Morgan Keegan asserts that one of the three arbitrators, Chairperson Mark

-2-

Kalish, failed to disclose two litigation matters in which he was involved and that this lack of disclosure establishes partiality and misbehavior under these provisions.[1]

"'[A]n arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.'" Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc., 304 F.3d 1331,1339 (11th Cir. 2002) (quoting Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998)).  "[A]n arbitrator is obligated to disclose those facts that 'create a reasonable impression of partiality' or put another way, 'information which would lead a reasonable person to believe that a potential conflict exists.'"[2]  Id.

_____

[1]Morgan Keegan also initially argued that the arbitrators awarded damages for a period beyond the six-year eligibility period applicable to FINRA arbitrations. (See Doc. 5 at 14-16).  However, Morgan Keegan has withdrawn that argument, (see Doc. 19 at 17-18), and the only remaining asserted grounds for vacatur involve Kalish's alleged failures to disclose.

[2]FINRA Rule 12405 provides in part:
Each potential arbitrator must make a reasonable effort to learn of, and must disclose to the Director, any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding, including:
(1) Any direct or indirect financial or personal interest in the outcome of the arbitration;
(2) Any existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any party's representative, or anyone who the arbitrator is told may be a witness in the proceeding, that are likely to affect impartiality or might reasonably create an appearance of partiality or bias;
(3) Any such relationship or circumstances involving members of the arbitrator's family or the arbitrator's current employers, partners, or business associates; and
(4) Any existing or past service as a mediator for any of the parties in

(quoting <u>Lifecare Int'l, Inc. v. CD Med., Inc.</u>, 68 F.3d 429, 433 (11th Cir. 1995), and <u>Gianelli</u>, 146 F.3d at 1312) (internal citation omitted).  "The partiality alleged must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative.'"  <u>Id.</u> (quoting <u>Middlesex Mut. Ins. Co. v. Levine</u>, 675 F.2d 1197, 1202 (11th Cir. 1982)).

The first matter that Morgan Keegan alleges Kalish should have disclosed is a 2000 lawsuit that Kalish filed—as an attorney representing himself—in Arizona.  That lawsuit ("the Associates First Capital case") involved a dispute over a consumer financing arrangement that Kalish made when purchasing approximately $6600 of audio-visual equipment from a retailer.  (<u>See</u> Exs. A & B to Doc. 5).  Kalish alleged in that suit that he was told by the salesman that no payments would be due for six months and that the purchase would be interest-fee if paid within that period; however, the defendant in that case sent statements to Kalish claiming that monthly payments were in fact due, and a payment dispute emerged.

Morgan Keegan contends that Kalish was obligated to disclose the Associates First Capital case because Kalish's complaint in that case "bore substantial similarities to a central dispute in the Fornell arbitration" and both involved decisions allegedly made in reliance upon oral representations.  (<u>See</u> Doc. 5 at 9).  Morgan Keegan asserts that the Associates First Capital case required Kalish to respond affirmatively to Question 19 on his Arbitrator Disclosure Checklist, which reads:  "Has your conduct been an issue in an arbitration or

---

the case for which the arbitrator has been selected.

FINRA Rule 12405(a).  The disclosure obligation of Rule 12405(a) "is a continuing duty that requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, at any stage of the proceeding, any such interests, relationships, or circumstances that arise, or are recalled or discovered."  FINRA Rule 12405(b).

litigation proceeding (other than a proceeding in which you served as an arbitrator)?  For example, if your conduct as a registered representative or manager was an issue in a case, but only the broker-dealer was named as a party, your response should be 'yes.'" (Doc. 5-3 at 4-5).  Morgan Keegan argues that it was prejudiced by Kalish's failure to disclose because Morgan Keegan—if it had known of the Associates First Capital case—could have peremptorily struck Kalish or sought his removal or recusal from the arbitration panel.  (See Doc. 5 at 10).

The second matter that Morgan Keegan argues should have been disclosed by Kalish is another Arizona lawsuit ("the Greer case").  Morgan Keegan avers that in the Greer case, the plaintiffs alleged that in Kalish—as an arbitrator—had engaged in misconduct and had engaged in ex parte communications with one of the parties to an arbitration.  (See id. at 11).  Morgan Keegan asserts that like the Associates First Capital case, the Greer case required Kalish to respond affirmatively to Question 19.  Morgan Keegan contends that Kalish's conduct was at issue in the Greer case and "he did not serve as an arbitrator in that case (only in the underlying arbitration)."  (Id.).

Morgan Keegan also asserts that the Greer case mandated an affirmative answer to Question 16 on the Arbitrator Disclosure Checklist, which reads:  "Have you, any member of your immediate family, [or] close social or business associate, been involved in the last five years in a dispute involving the same subject matter as contained in the case to which you are assigned?"  (Doc. 5-3 at 4).  Morgan Keegan urges that "[b]oth the Greer case and the Fornell arbitration involved claims of fraud" and that "both the underlying arbitration at issue in the Greer case and the Fornell arbitration involved claims of fraud, breach of

contract, and breach of fiduciary duty." (Doc. 5 at 12 (emphasis removed)).  Morgan Keegan argues that because it did not know of the Greer case, it was deprived of the opportunity to seek the removal or recusal of Kalish.

Fornell responds that Kalish was not required to disclose either the Associates First Capital case or the Greer case and that even if there were a duty to disclose, failure to disclose alone is not grounds for vacatur; instead, there must be a showing of "evident partiality or corruption" or "other misbehavior" that prejudiced Morgan Keegan.  Fornell asserts that there is no connection between either of the two undisclosed matters and the Fornell arbitration.  Additionally, Fornell notes that Kalish has served as an arbitrator in four other arbitrations involving Morgan Keegan and that Morgan Keegan prevailed in two of the four.  Fornell also points out that he—not Morgan Keegan—challenged Kalish prior to the Fornell arbitration, and after Morgan Keegan argued vigorously to keep Kalish on the panel, Fornell's requests for removal of Kalish were denied.  Thus, Fornell asserts that Morgan Keegan is now impermissibly trying to undo an arbitration merely because it does not like the outcome, noting that Morgan Keegan could have discovered both of the asserted matters prior to the arbitration because they were matters of public record.  Cf. Hobet Mining, Inc. v. Int'l Union, United Mine Workers of Am., 877 F. Supp. 1011, 1019 (S.D.W.V. 1994) ("[W]here information about an arbitrator is not known in advance, but could have been ascertained by more thorough inquiry or investigation, a post-award challenge suggests that nondisclosure is being raised merely as a 'tactical response to having lost the arbitration' or an inappropriate attempt to seek a 'second bite at the apple' because of dissatisfaction with the outcome." (internal citations omitted)).

Morgan Keegan has not established a basis for concluding that Kalish was partial or corrupt or that he engaged in misbehavior by not disclosing either the Associates First Capital Case or the Greer case.  There is no evidence of an "actual conflict," nor does either of these two matters constitute "information which would lead a reasonable person to believe that a potential conflict exists."  <u>Univ. Commons-Urbana, Ltd.</u>, 304 F.3d at 1339.  As noted by Fornell, Kalish's conduct was not at issue in the Associates First Capital case within the meaning of Question 19; he was a plaintiff challenging the conduct of the financing entity in a consumer transaction. Moreover, Morgan Keegan's assertion that the issues in the Associates First Capital case and the Fornell arbitration were "substantially similar" so as to evidence bias is rejected.  Kalish's lawsuit was a consumer credit dispute, not a securities action.  The issue of oral representations versus written materials is a common one in securities-related arbitrations, and the fact that written and oral communications were involved in Kalish's "no payments, no interest" financing dispute does not establish bias or a reasonable appearance of a conflict with respect to the Fornell arbitration.

Additionally, when Fornell moved to disqualify Kalish based on an adverse ruling against another investor in a separate arbitration involving the same investments that were at issue in the Fornell arbitration, Morgan Keegan responded that Fornell's "argument is beyond tenuous"; that "[i]t is ridiculous to assume that Mr. Kalish is biased against [Fornell] just because he has ruled against an unrelated claimant in the past"; and that "[e]ach arbitration matter is unique."  (Doc. 12-10 at 1). Kalish's 2000 consumer lawsuit is far more attenuated than the similar lawsuit that Morgan Keegan emphatically urged did not establish bias.  <u>Cf. Strobel v. Morgan Stanley Dean Witter</u>, No. 04cv1069-BEN(BLM), 2006 WL

3735739, at *4 (S.D. Cal. Dec. 11, 2006) (rejecting argument by securities arbitration loser that arbitrator should have disclosed that he had been a plaintiff in a malpractice suit against an accounting firm, noting that even if that suit "could somehow be brought within the questions on the [arbitrator disclosure] checklist, the connection is so tenuous that it does not qualify as 'evident partiality' on the part of the chairperson").

Furthermore, the Greer case is not within the scope of Question 19 or Question 16. Question 19 specifically excepts "proceeding[s] in which [Kalish] served as an arbitrator." The Greer case involved a complaint filed in court by the losing parties in an arbitration to vacate the arbitration award by the panel of which Kalish was a part. (See Greer case complaint, Doc. 5-6). He and the other panel members were named as parties by the losing party in the court filing. No conduct of Kalish distinct from the actions of rest of the panel is identified in the complaint. (See id.). Even if Kalish's conduct were at issue, any such conduct was his conduct in a proceeding in which he was serving as an arbitrator, which is specifically excepted from the scope of Question 19 by its terms. The distinction that Morgan Keegan attempts to draw between the Greer arbitration and a court action seeking to vacate the award in the arbitration is rejected; both are part of a proceeding in which Kalish served as an arbitrator.

Morgan Keegan's reliance on Question 16 as a basis for alleged required disclosure of the Greer case is also misplaced. Again, Kalish's only "involvement" in the Greer case was as an arbitrator. Additionally, the fact that Kalish was an arbitrator in a case involving fraud, breach of contract, or breach of fiduciary duty does not constitute "involvement in a dispute involving the same subject matter" within the meaning of Question 16 or create an

appearance of a conflict.  These are common issues in securities arbitrations, and as noted earlier, Morgan Keegan argued that it was "ridiculous" for Fornell to argue that Kalish's participation in an arbitration involving the same investments as were at issue the Fornell arbitration evidenced bias or required recusal.  The Greer case is far less similar than that other arbitration and does not involve the same subject matter.[3]

In sum, Morgan Keegan has failed to show partiality or misbehavior by Kalish. Neither the Associates First Capital case nor the Greer case constitutes "information which would lead a reasonable person to believe that a potential conflict exists."  Univ. Commons-Urbana, Ltd., 304 F.3d at 1339.  Grounds for vacatur of the arbitration award have not been presented.

### III.  Fornell's Motion for Sanctions

Fornell seeks imposition of an award of attorney's fees against Morgan Keegan as a sanction for filing a baseless motion to vacate.  This request is made pursuant to the Eleventh Circuit's decision in B.L. Harbert International, LLC. v. Hercules Steel Co., 441 F.3d 905 (11th Cir. 2006).  In that case, the Eleventh Circuit explained:

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken.  Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. . . . If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.

---

[3]The Greer case involved the purchase and sale of a cultured marble business. (See Doc. 5-6).

Id. at 913.  The Hercules Steel court gave notice and warning of the possibility of the imposition of sanctions in future cases involving baseless challenges to arbitration awards. Id. at 914.

Fornell's request for sanctions is well-taken.  Although Morgan Keegan argues that concerns over the neutrality of arbitrators must be taken seriously, an award of sanctions in this case would not thwart the ability of arbitration participants to challenge neutrality.  To do so in good faith, however, they must have an objectively reasonable basis for such a challenge—something that is woefully lacking here.  It was not objectively reasonable for Morgan Keegan to assert partiality or misbehavior of Kalish in failing to disclose the Associates First Capital or Greer cases.  Cf. World Bus. Paradise, Inc. v. Suntrust Bank, 403 F. App'x 468, 469-71 (11th Cir. 2010) (remanding with directions for a consideration of sanctions where appellant failed to present grounds justifying vacatur of arbitration award, "provided no evidence to support their claims of partiality and misconduct" of arbitrator, and brought frivolous appeal).  Fornell will be awarded its attorney's fees incurred in connection with defending Morgan Keegan's motion to vacate.

### IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Counterclaim to Vacate Arbitration Award (Doc. 5) filed by Morgan Keegan is **DENIED**.

2.  The Petition to Confirm Arbitration Award (Doc. 1) filed by Fornell is **GRANTED**.

3.  The Request for Sanctions (Doc. 11) filed by Fornell is **GRANTED.**

4.  **On or before Monday, August 20, 2012**, Fornell shall submit a motion detailing

his reasonable attorney's fees and costs incurred in defending against the motion to vacate. Along with that motion, Fornell shall submit a proposed judgment that includes both the arbitration award component and the attorney's fees component.

      **DONE** and **ORDERED** in Orlando, Florida this 3rd day of August, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record